UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

CRIMINAL ACTION NO. 0:21-CR-00011-DLB-EBA-1

UNITED STATES OF AMERICA,                                    PLAINTIFF,

V.                  **REPORT AND RECOMMENDATION**

DANNY E. HALL,                                                 DEFENDANT.

\*\*\* \*\*\* \*\*\* \*\*\*

Danny E. Hall seeks an order suppressing evidence, arguing that law enforcement failed to properly preserve the chain of custody of the evidence. The United States responded to the motion [R. 16], and Mr. Hall did not reply. Thus, this matter is ripe for ruling. For the forgoing reasons, it is **RECOMMENDED** that the Defendant's Motion to Suppress [R. 14] be **DENIED**.

**FACTS & PROCEDURAL HISTORY**

Utilizing confidential informants, officers with the Northeast Kentucky Drug Task Force conducted a controlled buy from Danny E. Hall at the Four Seasons Hotel in Ashland, Kentucky. [R. 16 at pg. 1]. On February 19, 2021, informants purchased two bags which officers believed to be narcotics, and weighed them in their packaging.[1] [*Id.* at pg. 2]. Afterwards, the substances were booked into custody at the Ashland Police Department and tested by the Kentucky State Police (KSP) Laboratory. The second controlled buy occurred on February 22, 2021, when informants purchased two additional bags with suspected narcotics purchased from Mr. Hall. [*Id.*].

---

[1] The first bag ("Item 1") contained a crystal-like substance and initially weighed 3.4 grams. [R. 16 at pg. 2]. Later testing revealed Item 1 contained 1.975 grams of methamphetamine. [*Id.*]. The second bag ("Item 2") contained a powder substance and initially weighed 2.2 grams. [*Id.*]. Subsequent testing revealed Item 2 contained 0.673 grams of a fentanyl/heroin mixture. [*Id.*].

Again, officers weighed them in their packaging, booked and transferred them to the Ashland Police Department, and requested a KSP Laboratory test the suspected narcotics.[2]  [*Id.* at 2–3].

After law enforcement conducted the controlled buys and collected video and audio evidence, a federal grand jury indicted Mr. Hall on five (5) counts of knowingly and intentionally distributing a mixture or substance containing Schedule II controlled substances in violation of 21 U.S.C. § 841(a)(1); and one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). [R. 1].  The Court then issued a warrant for the arrest of Mr. Hall. [R. 4]. He was ultimately arrested at his residence at the Four Seasons Hotel. [R. 16 at pg. 3]. During the arrest, officers recovered a bag from Mr. Hall's shoe containing a powdery substance. [*Id.*]. The officers, again, weighed the bag. [*Id.*].  The search also returned a 9mm Taurus pistol found in Mr. Hall's dresser. The items, along with other evidence, were booked into custody of the Ashland Police Department. [*Id.*].  The suspected narcotics found in Mr. Hall's shoe were submitted to KSP for testing, and the results came back positive for fentanyl.[3]  [*Id.*].  According to the United States, the pistol was transferred to the custody of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) for testing. [*Id.*].

Now, Mr. Hall moves to suppress (1) the alleged controlled substances purchased by confidential informants and seized during Mr. Hall's arrest; (2) the lab reports analyzing the alleged controlled substances; and (3) "any and all evidence relating to the firearm charge," presumably the 9mm Taurus pistol. [R. 14 at pg. 2]. The United States responded, stating that Mr. Hall's motion is premature, meritless, and therefore should be denied. [R. 16 at pg. 1].

---

[2] The first bag ("Item 3") contained a crystal-like substance and initially weighed 2.0 grams. [R. 16 at pg. 2]. After testing, Item 3 contained 1.652 grams of methamphetamine. [*Id.* at pg. 3]. The second bag ("Item 4") contained a powder-like substance and initially weighed 2.0 grams. [*Id.* at pg. 2]. Later testing indicated that Item 4 contained 1.550 grams of a fentanyl/heroin mixture. [*Id.* at pg.3].

[3] The sample found in Mr. Hall's shoe initially was weighed as 4.0 grams of fentanyl, while KSP testing fond the substance contained 2.593 grams of fentanyl. [R. 16 at pg. 3].

## ANALYSIS

Here, Mr. Hall's Motion to Suppress is predicated on multiple allegations that the United States has failed to offer "proof of a complete, proper chain of custody" as to suspected narcotics obtained through controlled purchases and seized during his arrest, and as to the firearm seized during his arrest. [R. 14 at pg. 2]. First, Mr. Hall alleges that the discrepancy between the weight of the suspected narcotics when they were seized and when they were tested by the KSP Laboratory "suggest[s] the possibility, if not probability, that the integrity of the evidence has been spoiled, that the lab may not have received the correct sample or that the seized alleged methamphetamine, heroin and[] fentanyl may have been lost or used in some other endeavor." [R. 14 at pg. 4]. He further places a burden upon the United States to provide persuasive evidence that the controlled substance evidence has not been altered—a burden he alleges the United States has not met. [*Id.*]. Second, Mr. Hall alleges that he has not "receive[d] any information regarding the chain of custody as to the firearm in question" and that this is grounds for suppression at trial. [*Id.*].

The question of whether to grant Mr. Hall's Motion to Suppress turns on whether a disputed search and seizure has infringed upon an interest which the Fourth Amendment was designed to protect. *See Rakas v. Illinois*, 439 U.S. 128, 140 (1978). The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. "When evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in a criminal proceeding against the victim of the illegal search and seizure." *Illinois v. Krull*, 480 U.S. 340, 347 (1987). A person who claims to have been aggrieved of a constitutional violation bears the initial burden of production and persuasion to suppress evidence. *United States v. Smith*, 783 F.2d 648, 650 (6th Cir. 1986). Once the defendant has made basis for his motion, the government then has the burden of demonstrating that there was not a constitutional violation. *See United States v. Bradley*, 163 Fed. App'x. 353, 357 (6th Cir. 2005) (citing *United States v.*

*Matlock*, 415 U.S. 164, 177 n.14, (1974); *Colorado v. Connelly*, 479 U.S. 157, 168 (1986)).

As a preliminary matter, Mr. Hall's motion does not challenge the constitutionality of a search or seizure. In fact, his motions do not allege any constitutional violations. *See* [R. 14]. Rather, he argues that improper chain of custody of physical evidence warrants suppression. The Sixth Circuit has indicated that "it is unclear whether a motion '[m]erely raising the possibility of tampering' can constitute a motion to suppress for purposes of Federal Rule of Criminal Procedure 12." *United States v. Collier*, 246 Fed. App'x 321, 335 (6th Cir. 2007). In fact, when considering whether the defective chain of custody amounts to a Due Process violation, the Court held that a defendant is "not constitutionally entitled to an 'air-tight' chain of custody.'" *Baker v. Kassulke*, No. 91-6262, 1992 U.S. App. LEXIS 6424, at *2 (6th Cir. Apr. 1, 1992).

Absent a clear showing that physical evidence was tampered with, an improper or defective chain of custody "typically go[es] toward the weight of the evidence, and not its admissibility." *Collier*, 246 Fed. App'x at 335. Moreover, absent clear evidence of tampering, the Court may presume public officers have properly discharged their duties as to the handling of evidence. *United States v. Allen*, 106 F.3d 695, 700 (6th Cir. 1997). In the context of defective chain of custody allegations, the Sixth Circuit held "[m]erely raising the possibility of tampering is insufficient to render evidence inadmissible." *United States v. Allen*, 106 F.3d 695, 700 (6th Cir. 1997) (citing *United States v. Kelly*, 14 F.3d 1169, 1175 (7th Cir. 1994)). Where a defendant moved to suppress evidence upon allegations that law enforcement had intentionally mishandled evidence that was allegedly cocaine, the Sixth Circuit declined to find the evidence inadmissible. *United States v. Williams*, 640 Fed. App'x 492, 496 (6th Cir. 2016). "[P]hysical evidence is admissible so long as the possibilities of misidentification or alteration are eliminated, not absolutely, but as a matter of reasonable probability." *Id.* (quoting *Allen*, 106 F.3d at 700) (internal citations and quotations omitted).

In *United States v. Gibson*, a district court in this Circuit followed this approach on facts very similar to the matter at bar. *United States v. Gibson*, No. 14-20083-SHM-dkv, 2014 U.S. Dist. LEXIS 164429 (W.D. Tenn. Sep. 29, 2014), *adopted by United States v. Gibson*, No. 14-20083, 2014 U.S. Dist. LEXIS 162539 (W.D. Tenn. Nov. 20, 2014). There, the defendant was arrested for possession of contraband (methamphetamine and marijuana). *Id.* at *1. The substances were weighed by the arresting officer and tested, but a subsequent test reported significantly different weights as to each sample. *Id.* at *3. There, the defendant moved to suppress the evidence because the government could not demonstrate a proper chain of custody, which he alleged violated his right to Due Process under the Fifth Amendment. *Id.* at *4. The Magistrate Judge recommended denying the motion to suppress in large part because the defendant had not alleged "tampering with evidence, any foul play, or any outrageous conduct." *Id.* at *7. Moreover, the court stated "[c]hain of custody issues are jury questions" and a break in the chain of custody would go toward the weight of the evidence rather than its admissibility. *Id.* at *6.

Here, Mr. Hall does not allege the controlled substances have been tampered with, nor any improper or constitutionally egregious behavior by the public officers charged with handling the evidence. Mere weight discrepancies between when the drugs were initially weighed and when they were tested by KSP do not render the drugs inadmissible as evidence. As for the firearm, the United States has proffered that records reflect the firearm was transferred to the custody of ATF where it was "identified, a nexus determination made, and test fired." [R. 16 at pg. 3]. The United States will have the opportunity to establish the chain of custody at trial and, likewise, Mr. Hall will have the opportunity to challenge its admission due to an improper or defective chain of custody. Accordingly, excluding it from evidence as this stage would be improper. *See Gibson*, 2014 U.S. Dist. LEXIS 162539, at *5 ("[Because] the Government must authenticate the drugs to admit them into evidence, the chain of custody argument is appropriately addressed by a motion

in limine.").

## RECOMMENDATION

For the above reasons, it is **RECOMMENDED** that Defendant's Motion to Suppress [R. 14] be **DENIED**.

\*\*\* \*\*\* \*\*\* \*\*\*

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Recommended Disposition. Particularized objections to this Recommended Disposition must be filed within fourteen days from the date of service thereof or further appeal is waived. *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Thomas v. Ann*, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); FED. R. CRIM. P. 59(b)(1).

Signed February 9, 2022.



Signed By:
*Edward B. Atkins* EBA
**United States Magistrate Judge**